J-A11044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
THOMAS PATRICK MCKERNS   :
  :
Appellant   :   No. 1140 MDA 2023

Appeal from the PCRA Order Entered July 14, 2023
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0000145-2021

BEFORE: BOWES, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:      **FILED: MAY 31, 2024**

Thomas Patrick McKerns (Appellant) appeals from the order dismissing

his second petition filed under the Post Conviction Relief Act (PCRA).[1] We

affirm.

On January 14, 2021, Appellant called 911 to report a fire at his

residence in Lebanon County. N.T., 1/25/22, at 8. Twenty firefighters from

five departments were needed to extinguish the fire, which originated in the

attic. *Id*. at 18-19, 26. At the scene, Appellant suggested a space heater

next to a mattress had caused the fire. *Id.* at 29. Concerned this was not

the case, firefighters notified the Pennsylvania State Police. *Id.*; *see also id.*

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

at 39-40 (fire chief's testimony that "the fire was telling me a different story" than Appellant).

Pennsylvania State Police Troopers Corey Heimbach and Janssen Herb, who specialize in fire investigations, investigated the fire. *Id.* at 83-84, 97, 164. Appellant was "[v]ery calm, cordial, and cooperative" with the troopers' investigation. *Id.* at 165. Appellant advised he had a space heater running in the attic for a few days prior to the fire. *Id.* at 162. However, the troopers found no indication the space heater had caused the fire. *Id.* at 157. When the troopers located a BIC lighter in the attic, they told Appellant they believed someone lit the fire. *Id.* at 167. Appellant stated, "If you think I set it, why don't you arrest me?" *Id.*

The troopers stated they were not accusing Appellant of starting the fire. *Id.* at 168. Appellant then stated "in a joking manner" that he started the fire, saying he was telling the troopers what he thought they wanted to hear. *Id.* at 170. The troopers stated they were not "looking to arrest somebody that was innocent." *Id.* at 170. Upon further questioning, Appellant admitted he started the fire, explaining he used gasoline and a lighter. *Id.* at 171. Appellant stated he did it to erase bad memories relating to an ex-girlfriend. *Id.* Appellant thereafter agreed to a formal interview at the State Police

barracks, during which he waived his **Miranda**[2] rights. **Id.** at 172, 178-79. Appellant again admitted to starting the fire. **Id.**

The Commonwealth subsequently charged Appellant with one count each of arson (endangering persons) and arson (endangering property).[3] Shannon Pascal, Esquire (trial counsel), represented Appellant. Trial counsel filed a pretrial motion to suppress Appellant's confession, alleging his diminished mental capacity prevented him from knowingly and intelligently waiving his **Miranda** rights. The trial court denied the motion.

**At trial, Appellant testified that he did not start the fire.** N.T., 1/26/22, at 365-66. He repeated his suspicion that the space heater caused the fire. **Id.** at 371-72. Appellant testified that, at the time of the fire, he was in a "bad mental state" and "felt like everybody was out to get me." **Id.** at 356. Though he agreed the troopers treated him respectfully, Appellant testified that, during his conversations with them, "I couldn't control my thoughts and I couldn't think things through." **Id.** at 357, 364. On January 26, 2022, a jury convicted Appellant of both arson charges.

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[3] 18 Pa.C.S.A. § 3031(a)(1)(i), (c)(2).

On May 11, 2022, the trial court imposed an aggregate sentence of 2½ to 6 years in prison.[4] On May 23, 2022, trial counsel filed a post-sentence motion challenging the weight and sufficiency of the evidence. On July 25, 2022, before the trial court had disposed of his post-sentence motion, Appellant filed a *pro se* PCRA petition, arguing his confession was coerced and that trial counsel rendered ineffective assistance in connection with the suppression motion. After conferring with trial counsel, Appellant opted to withdraw his PCRA petition[5] and pursue his post-sentence motion. On October 17, 2022, the trial court denied Appellant's post-sentence motion. No direct appeal followed.

On November 22, 2022, Appellant, acting *pro se*, filed the instant, timely PCRA petition. The PCRA court appointed new counsel (PCRA counsel), who filed an amended petition. The petition asserted, *inter alia*, that trial counsel rendered ineffective assistance by failing to pursue an insanity or diminished capacity defense, and by failing to adequately cross-examine Trooper

---

[4] Appellant's sentence was below the mitigated range of the sentencing guidelines. The sentencing court indicated Appellant's case was one of few in the court's career in which it imposed a sentence below the mitigated range. Trial Court Order, 5/11/22, at 3. The sentencing court considered Appellant's history of mental illness, his lack of intent to harm anyone, and the troopers' statements at the time of Appellant's confession that Appellant was "not a typical criminal" and "should not have to go to jail." *Id.* at 1-2.

[5] On August 17, 2022, the PCRA court dismissed Appellant's PCRA petition without prejudice.

Heimbach regarding Appellant's mental capacity. **See** Amended PCRA Petition, 1/27/23, at 3-6.

On July 12, 2023, the PCRA court held a hearing, at which Appellant and trial counsel testified. Appellant testified he suffers from "[s]evere depression and anxiety," but did not begin taking medication for his conditions until after the fire. N.T., 7/14/23, at 10, 20. Sometime before the fire, he was involuntarily committed because he "thought there were people in my yard" and "thought people were watching me." **Id.** at 8. Appellant testified he started the fire to "erase bad memories" relating to an ex-girlfriend who had "left her stuff in my house for over three years." **Id.** at 6, 19. He claimed, "[a]t the time I set the fire, I honestly didn't think legally I did anything wrong. It was my house." **Id.** at 7. Appellant testified the police "pretty much brainwashed" him into confessing by telling him he would not go to prison. **Id.** at 11.

Appellant claimed he initially told trial counsel he started the fire. **Id.** at 12-13. According to Appellant, upon learning he faced substantial prison time, he got "scared," "changed [his] story," and told trial counsel he did not start the fire. **Id.** at 13-14. Appellant maintained he asked trial counsel to prepare an insanity defense, obtain medical records, and secure a medical evaluation. **Id.** at 7, 16, 19. He testified trial counsel "completely spun me away from [an insanity defense] and led me to believe that because I confessed to the police, it was irrelevant." **Id.** at 19.

Trial counsel testified Appellant never told counsel he started the fire. *Id.* at 22. Trial counsel stated Appellant initially claimed he did not remember how the fire started, but eventually attributed the fire to a malfunctioning heater. *Id.* Trial counsel testified he and Appellant formulated a trial strategy "based on [Appellant's] assertion that he did not do it." *Id.* at 24; *see also id.* at 26 (indicating strategy was that Appellant had made a "false confession").

Trial counsel denied Appellant ever said he wanted to pursue an insanity defense. *Id.* at 24. Trial counsel testified he reviewed some of Appellant's medical records, including an evaluation conducted after his arrest, but trial counsel concluded the records contained nothing to support an insanity defense. *Id.* at 25, 28. According to trial counsel, Appellant's claim he did not start the fire foreclosed an insanity defense. *Id.* at 25.

On July 14, 2023, the PCRA court dismissed the petition. Appellant timely appealed. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our review:

1. Did the PCRA court inappropriately deny, or abuse its discretion, in denying [Appellant's] claim of ineffective assistance of counsel for failing to pursue an insanity defense?

2. Did the PCRA court inappropriately deny, or abuse its discretion, in [denying Appellant's] claim of ineffective assistance of counsel for failing to question the witnesses about [Appellant's] mental health?

Appellant's Brief at 2-3.

"We review the denial of PCRA relief by examining whether the PCRA court's conclusions are supported by the record and free from legal error." *Commonwealth v. Johnson*, 289 A.3d 959, 979 (Pa. 2023) (citing *Commonwealth v. Housman*, 226 A.3d 1249, 1260 (Pa. 2020)). The scope of our review is "limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." *Commonwealth v. Hanible*, 30 A.3d 426, 438 (Pa. 2011) (citation omitted). A PCRA court's credibility determinations "are to be provided great deference," and "there is no justification for an appellate court, relying solely on a cold record, to review the fact-finder's first-hand credibility determinations." *Commonwealth v. Rizor*, 304 A.3d 1034, 1058 (Pa. 2023) (citations, quotation marks, and brackets omitted).

Where an appellant claims ineffective assistance of counsel, "we begin, as we must, with the presumption that counsel acted effectively." *Johnson*, 289 A.3d at 979 (citing *Commonwealth v. Robinson*, 82 A.3d 998, 1005 (Pa. 2013)); *see also Commonwealth v. Lesko*, 15 A.3d 345, 380 (Pa. 2011) ("When evaluating ineffectiveness claims, judicial scrutiny of counsel's performance must be highly deferential." (citation and quotation marks omitted)).

> A PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)).

To establish a claim of ineffectiveness, a PCRA petitioner must plead and prove:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (employing the ineffective assistance of counsel test from *Commonwealth v. Pierce*, 527 A.2d 973, 975-76 (Pa. 1987)). … Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. Finally, because a PCRA petitioner must establish all the *Pierce* prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

*Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015) (citations modified). We have explained that

> a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. *See Commonwealth v. Jones*, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim ..., he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citation modified; brackets omitted).

In his first issue, Appellant argues trial counsel rendered ineffective assistance by failing to pursue an insanity defense. *See* Appellant's Brief at

- 8 -

5-8. Appellant maintains he asked trial counsel to pursue an insanity defense, and gave counsel medical records reflecting Appellant's prior involuntary commitment. *Id.* at 8. Appellant argues trial counsel should have conducted an "independent investigation" of Appellant's mental health and subpoenaed additional records. *Id.* at 7. Appellant asserts an insanity defense would have been successful if pursued. *Id.* at 8.

"An insanity defense focuses upon a defendant's capacity, at the time of the offense, to understand the nature and quality of his actions or whether he knew that his actions were wrong." *Commonwealth v. Fortune*, 302 A.3d 780, 784 (Pa. Super. 2023) (citing *Commonwealth v. Hughes*, 865 A.2d 761, 788 n.29 (Pa. 2004)). The insanity defense is defined by statute:

> **(a) General rule.--**The mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of evidence that the actor was legally insane at the time of the commission of the offense.
>
> **(b) Definition.--**For purposes of this section, the phrase "legally insane" means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong.

18 Pa.C.S.A. § 315. "It has long been accepted that criminal defendants may be presumed sane for purposes of determining their criminal liability." *Commonwealth v. Watson*, 292 A.3d 562, 567 (Pa. Super. 2023) (citation omitted); *see also Commonwealth v. Rabold*, 951 A.2d 329, 341 (Pa. 2008) (stating, "the placement of the burden with the defendant to prove

insanity by a preponderance of the evidence does not offend constitutional norms.").

Our Supreme Court has observed:

A defense of insanity acknowledges commission of the act by the defendant, while maintaining the absence of legal culpability. **Where a defendant has testified at trial and has denied having committed a crime, this Court has declined to deem counsel ineffective for failing to present a defense that would have been in conflict with his client's own testimony.**

*Hughes*, 865 A.2d at 788 (emphasis added; citations omitted); *see also Commonwealth v. Smith*, 17 A.3d 873, 901 (Pa. 2011) (recognizing where appellant "specifically denied having committed the offenses, … counsel cannot be held ineffective for failing to present an inconsistent defense."); *Commonwealth v. Cross*, 634 A.2d 173, 175 (Pa. 1993) (concluding that where "appellant maintained that he had not committed the murders[,] … it would have been improper for his attorneys to introduce any evidence of insanity.")

Here, the PCRA court determined Appellant's first ineffectiveness claim lacked arguable merit, because Appellant testified at trial that he did not start the fire. PCRA Court Opinion, 8/31/23, at 6. Though Appellant claimed he told trial counsel he started the fire, the PCRA court credited trial counsel's testimony to the contrary. *Id.* at 2 ("Trial counsel testified that [Appellant] advised [trial counsel] during the pre-trial discussions that [Appellant] did not set the fire …, and [Appellant] did not request an insanity defense. [The PCRA court] found trial counsel's testimony to be credible."). We are bound by the

PCRA court's credibility determinations. *Rizor*, 304 A.3d at 1058. The PCRA court's findings are supported by the record, and its legal conclusion is sound. Because Appellant precluded an insanity defense by denying he started the fire, his underlying claim has no arguable merit. *Hughes*, 865 A.2d at 788. Accordingly, Appellant's first ineffectiveness claim fails.[6]

In his second issue, Appellant argues "trial counsel was ineffective for failing to question the Pennsylvania State Trooper" about Appellant's mental health issues and his understanding of the *Miranda* waiver. Appellant's Brief at 9. Appellant asserts "if the witness was properly cross-examined," a different outcome would have resulted. *Id.*

Appellant failed to develop his argument in connection with this claim, and cites no supporting authority.[7] As the trooper did not testify at the PCRA

_____

[6] Appellant also argues trial counsel should have obtained additional medical records relating to Appellant's mental health. Appellant's Brief at 7-8. However, Appellant presented no additional records at the PCRA hearing, and therefore failed to prove whether any relevant records existed. *See Commonwealth v. Fisher*, 813 A.2d 761, 771 (Pa. 2002) (ineffectiveness claim rejected where petitioner "did not present anything at the PCRA evidentiary hearing which would have produced a different result [on the underlying issue].... Counsel cannot be faulted for failing to discover or present evidence if [petitioner] fails to meet the burden of establishing that the evidence exists.").

[7] We have observed:

> Each distinct issue in the argument section of a brief must, at a minimum, contain "citations of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). When a party "cites no pertinent authority to substantiate [its] claim ... appellant's issue is

*(Footnote Continued Next Page)*

- 11 -

hearing, Appellant failed to prove whether any favorable testimony could have been elicited.  *Fisher*, 813 A.2d at 771; *see also Commonwealth v. Selenski*, 228 A.3d 8, 17 (Pa. Super. 2020) (rejecting an ineffectiveness claim for failure to call a witness where proposed witness did not testify at PCRA hearing, and petitioner did not demonstrate how witness's testimony would have been helpful).  Moreover, it is unclear whether Appellant contends this additional cross-examination would have produced a different result at the suppression hearing, at trial, or both.  *See* Appellant's Brief at 9.  As we "cannot discern the point of this argument," it is waived.  *Pi Delta Psi, Inc.*, 211 A.3d at 884.

---

waived."  *Commonwealth v. Simmons*, 56 A.3d 1280, 1286 (Pa. Super. 2012)….

When an appellant's argument is underdeveloped, we may not supply it with a better one.  In such situations, "[w]e shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem the issue to be waived."  *Commonwealth v. Cannavo*, 199 A.3d 1282, 1289 (Pa. Super. 2018).

*Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 883-85 (Pa. Super. 2019).

For the foregoing reasons, neither of Appellant's issues merit relief. We thus affirm the order dismissing Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/31/2024